# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00855-STV

T.J.G.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____

# ORDER
_____

Chief Magistrate Judge Scott T. Varholak

    This matter is before the Court on Plaintiff T.J.G.'s Complaint seeking review of the Commissioner of Social Security's decision denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. § 401 *et seq.* [#1]  The parties have consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. 636(c) and D.C.COLO.LCivR 72.2. [#8]  The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  This Court has carefully considered the Complaint [#1], the Social Security Administrative Record [#7], the parties' briefing [##9, 10, 13], and the applicable case law, and has determined that oral argument would not materially assist in the disposition of this appeal.  For the following reasons, the Court **REVERSES** the

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

Commissioner's decision and **REMANDS** this matter for further proceedings consistent with this Order.

I.  **LEGAL STANDARD**

   A.  **Five-Step Process for Determining Disability**

"To qualify for DIB, a claimant must establish that he met the statutory requirements for disability on or before his date last insured." *Romero v. Saul*, No. CV 20-256 JFR, 2021 WL 1873468, at *1 n.6 (D.N.M. May 10, 2021) (citing 42 U.S.C. §§ 416(i)(3), 423(c)(1)); *see also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (finding that claimant "had the burden of proving that she was totally disabled on [the] date [last insured] or before"). The SSA defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[2]  42 U.S.C. § 423(d)(1)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax*, 489 F.3d at 1084. "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . ., the Commissioner . . . shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 423(d)(2)(B).

---

[2] "Substantial gainful activity" is defined in the regulations as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510; *see also* 20 C.F.R. § 404.1572.

"The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled." *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). The five-step inquiry is as follows:

1. The Commissioner first determines whether the claimant's work activity, if any, constitutes substantial gainful activity;

2. If not, the Commissioner then considers the medical severity of the claimant's mental and physical impairments to determine whether any impairment or combination of impairments is "severe;"[3]

3. If so, the Commissioner then must consider whether any of the severe impairment(s) meet or exceed a listed impairment in the appendix of the regulations;

4. If not, the Commissioner next must determine whether the claimant's residual functional capacity ("RFC")—*i.e.*, the functional capacity the claimant retains despite his impairments—is sufficient to allow the claimant to perform his past relevant work, if any;

5. If not, the Commissioner finally must determine whether the claimant's RFC, age, education and work experience are sufficient to permit the claimant to perform other work in the national economy.

*See* 20 C.F.R. § 404.1520(a)(4); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Bailey v. Berryhill*, 250 F. Supp. 3d 782, 784 (D. Colo. 2017). "The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four," after which the burden shifts to the Commissioner at step five to show that the claimant retains the ability to perform work in the national economy. *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013); *Lax*, 489 F.3d at 1084. "A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis."

---

[3] The regulations define severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

*Ryan v. Colvin*, 214 F. Supp. 3d 1015, 1018 (D. Colo. 2016) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

### B. Standard of Review

In reviewing the Commissioner's decision, the Court's review is limited to a determination of "whether the Commissioner applied the correct legal standards and whether her factual findings are supported by substantial evidence." *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)). "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Bailey*, 250 F. Supp. 3d at 785 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence "means— and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). "It requires more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax*, 489 F.3d at 1084). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality

4

test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted). The Court, however, "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Hackett*, 395 F.3d at 1172.

## II.   BACKGROUND[4]

Plaintiff was born in 1971. [AR 196][5] Plaintiff speaks and understands English. [AR 198] Plaintiff completed the ninth grade. [AR 200] On May 21, 2021, Plaintiff filed an application for DIB. [AR 196-97] Plaintiff claimed a disability onset date of December 31, 2020, and thus Plaintiff was 48 years old at the time of the alleged onset. [AR 196] In her application, Plaintiff claimed disability based upon arthritis, fibromyalgia, post-traumatic stress disorder ("PTSD"), left shoulder pain, a bulging disc, degenerative disc disease, sciatica, anxiety, and depression. [AR 199] Plaintiff previously worked as a caregiver and a cashier. [AR 200-01]

Plaintiff's application for DIB was initially denied on March 14, 2022. [AR 83] Plaintiff filed a request for reconsideration which was denied on January 11, 2023. [AR 84] On February 17, 2023, Plaintiff completed a request for a hearing before an ALJ. [AR 119-20] A hearing was conducted before ALJ Kathleen Eiler on August 21, 2023. [AR 39-60] Plaintiff was represented at the hearing by attorney Mary Kinas. [AR 39] Plaintiff and Vocational Expert ("VE") Pat Pauline testified at the hearing. [AR 39-60]

On September 26, 2023, the ALJ issued her decision. [AR 21-34] After evaluating the evidence pursuant to the five-step sequential evaluation process, the ALJ denied

---

[4] Because Plaintiff raises a single issue concerning the determination by the Administrative Law Judge ("ALJ") that Plaintiff had performed work that constituted substantial gainful activity ("SGA"), the Court does not detail Plaintiff's medical history in this Order.

[5] All references to "AR" refer to the sequentially numbered Social Security Administrative Record filed in this case. [#7]

Plaintiff's application for DIB.  [*Id.*]  At step one, under the heading "[Plaintiff] has not engaged in substantial gainful activity since December 31, 2020, the alleged onset date," the ALJ nonetheless concluded that Plaintiff had, indeed, earned $21,963.28 in self-employment in 2022, and thus had "work[ed] at disqualifying SGA level in 2022 when performing work with Uber Eats."  [AR 24]  Nonetheless, because that conclusion did "not determine the entire period at issue," the ALJ continued with the five-step evaluation process.  [*Id.*]

At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis of the right hand, degenerative disc disease of the lumbar spine, tendinopathy of the left hip, rotator cuff tear of the left shoulder, medial epicondylitis, obesity, benign positional paroxysmal vertigo, generalized anxiety disorder, and PTSD.  [AR 24-25]  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the appendix of the regulations.  [AR 25-26]

Following step three, the ALJ determined that Plaintiff retained the RFC to perform light work[6] with the following limitations:

> [Plaintiff] can never climb ladders, ropes, and scaffolds and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl.  She can occasional[ly] reach overhead with the left upper extremity and frequently handle and finger with the right upper extremity.  She must avoid all exposure to unprotected heights or moving machinery.  She can engage in occasional interaction with coworkers, supervisors, and the general public.  She can handle no more than occasional changes in a routine work setting.  She cannot perform production rate pace work (meaning no one waiting

---

[6] Light work is defined to include work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and that "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b), 416.967(b).

6

down a line for this person to complete her tasks before the coworker can complete their own tasks).

[AR 27]  The ALJ provided a narrative setting forth the evidence considered in determining the RFC and explaining the ALJ's consideration of the medical opinions in the record. [AR 27-32]

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.[7]  [AR 32]  At step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including jobs such as merchandise marker, cleaner/housekeeper, and collator operator.  [AR 33-34] Based on this, the ALJ determined that Plaintiff had not been under a disability from December 31, 2020, the alleged onset date, through September 26, 2023, the date of the ALJ's decision.  [AR 34]

Plaintiff timely requested a review of the ALJ's decision by the Appeals Council, and on April 5, 2024, the Appeals Council denied Plaintiff's request for review.  [AR 5-10] After seeking several extensions of time to file a civil action [AR 1-4], on March 16, 2025, Plaintiff timely filed her appeal with this Court [#1].

### III.    ANALYSIS

On appeal, Plaintiff raises a single argument.  Specifically, Plaintiff argues that the ALJ misapplied the law regarding self-employment income and relied upon those erroneous findings throughout the sequential evaluation process.  [#9 at 3-9]  Defendant

---

[7] At step four, a claimant will be determined to be "not disabled" when it is determined that the claimant retains the RFC to perform either: (1) the actual functional demands and job duties of a particular past relevant job as performed by the claimant, or (2) the functional demands and job duties of that job as generally required by employers throughout the national economy.  See Social Security Ruling 82-61, 1982 WL 31387 (1982); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993).

7

appears to concede that the ALJ erred in her analysis of Plaintiff's self-employment income, but nonetheless maintains that any error was harmless. [#10 at 2 ("The Commissioner acknowledges that to foreclose Plaintiff's technical argument, the ALJ could have provided additional discussion, but any error was harmless given the context here where the ALJ's findings were based on Plaintiff's testimony and unchallenged net income."). The Court agrees with the parties that the ALJ erred in her treatment of Plaintiff's self-employment income and agrees with Plaintiff that the error was not harmless.

For self-employed individuals, the regulations provide that the Commissioner "will consider [the claimant's] activities and their value to [the claimant's] business to decide whether [the claimant has] engaged in substantial gainful activity." 20 C.F.R. § 404.1575(a)(2). The Commissioner is not supposed to "consider [the claimant's] income alone because the amount of income [the claimant] actually receive[s] may depend on a number of different factors, such as capital investment and profit-sharing agreements." *Id.* The Commissioner determines whether a self-employed individual has engaged in SGA by applying three tests. *Id.* If the self-employed claimant has not engaged in SGA under test one, then the Commissioner considers tests two and three. *Id.*

Pursuant to test one, the claimant has "engaged in substantial gainful activity if [they] render services that are significant to the operation of the business and receive a substantial income from the business. *Id.* at § 404.1575(a)(2)(i). If the claimant is not a farm landlord and operates the business entirely by themselves, any services rendered are considered significant to the business. *Id.* at § 404.1575(b). If the business involves the services of more than one person, the Commissioner considers the claimant "to be

rendering significant services if [they] contribute more than half the total time required for the management of the business, or [they] render management services for more than 45 hours a month regardless of the total management time required by the business." *Id.*

In determining substantial income, the Commissioner must first determine countable income. *Id.* at § 404.1575(c). In determining countable income, the Commissioner deducts normal business expenses from the claimant's gross income to determine net income. *Id.* at § 404.1575(c)(1). Once net income is determined, the Commissioner deducts the reasonable value of any significant amount of unpaid help by the claimant's spouse, children, or others. *Id.* Countable income is considered substantial if: (1) it averages more than the amounts described in Section 404.1574(b)(2); or (2) it averages less than the amounts described in Section 404.1574(b)(2) but it is either (a) comparable to what it was before the claimant became seriously impaired if the Commissioner had not considered the claimant's earnings, or (b) is comparable to that of unimpaired self-employed persons in the claimant's community who are in the same or a similar business as their means of livelihood. *Id.* at § 404.1575(c)(2). Under the agency's guidelines, for the year 2022, countable income of a self-employed individual is SGA if it averages more than $1,350 per month. Program Operations Manual System, DI 10501.015 Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity, Policy — Table 2 — Nonblind Individuals Only, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last visited October 28, 2025).

Here, the ALJ appears to have applied the first test and concluded that Plaintiff had engaged in SGA because she had self-employment income of $21,963.28. [AR 24] This number, which actually reflects both self-employment income and income from

9

Plaintiff's brief stint working at Michael's Stores, appears to have come from administrative earnings records. [AR 193] These records reflect that Plaintiff had self-employment earnings of $21,543 in 2022. [*Id.*]

By relying upon this number alone, the ALJ appears to have done what the Commissioner cannot do—consider Plaintiff's income alone. It is far from clear from the face of the agency records that the self-employment total reflects net income, as opposed to gross income. [AR 193] And, certainly, if Plaintiff utilized her vehicle while delivering for Uber Eats, she would have incurred fuel expenses that would have reduced the gross income. Nor does the record reflect whether Plaintiff had a family member or anybody else assist her while she delivered for Uber Eats, the reasonable value of which would have needed to be deducted from the $21,543 figure. 20 C.F.R. § 404.1575(c)(1). The ALJ simply did not develop the record sufficiently to conclude that Plaintiff's self-employment work constituted SGA.

The Commissioner nonetheless argues that this error was harmless. "To deem an error harmless in the social-security context, [the Court] must be able to say with confidence that no reasonable administrative factfinder, following the correct analysis, could have resolved the matter in any other way." *Jones v. Berryhill*, 720 F. App'x 457, 459 (10th Cir. 2017); *D.M.M. v. Bisignano*, No. 24-cv-02293-TPO, 2025 WL 2793063, at * 4 (D. Colo. Sept. 25, 2025) ("This court may apply harmless error in the social security context where, based on material the ALJ did at least consider (just not properly), [this court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." (quotation omitted)). Nonetheless, "to the extent a harmless-error determination rests on legal or

evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Here, the Commissioner first points to Plaintiff's counsel's question to Plaintiff that she made $21,500 from working for Uber Eats and that she thus was "making pretty good money." [#10 at 10 (citing AR 46-47)] According to the Commissioner, this demonstrates that the agency's records were accurate and, presumably, proves that Plaintiff had countable income exceeding $1,350 per month. [*Id.*] But nothing in that question suggested that Plaintiff's counsel was making a concession that the $21,500 figure reflected countable income. And Plaintiff was not asked any questions about her expenses or whether anybody was assisting her while she worked for Uber Eats. [AR 46-47] Thus, this question does not reveal Plaintiff's countable income and the Court cannot confidently say that no reasonable factfinder could conclude that Plaintiff's self-employment income did not constitute SGA.

The Commissioner also argues that the error was harmless because the ALJ proceeded to the remaining four steps of the sequential evaluation process. [#10 at 11-13] But the ALJ's conclusion that Plaintiff had done work which qualified as SGA clearly impacted the rest of the ALJ's analysis. For example, the ALJ reasoned that Plaintiff's "ability to work at SGA as recently as late 2022 supports the finding that she can perform light exertion." [AR 31] Similarly, the ALJ rejected the handling and fingering limitations opined by a medical examiner whom the ALJ otherwise found persuasive, in part, because Plaintiff had performed work in 2022 at the SGA level. [*Id.*] And the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms

11

unsupported, in part, because she has been able to perform SGA. [AR 30] Without the ALJ's faulty—or at least insufficiently supported—conclusion that Plaintiff had performed SGA in 2022, the Court cannot confidently say that the ALJ would have reached the same conclusion as to Plaintiff's RFC or Plaintiff's disability status. And the fact that there was other evidence in the record to support the ALJ's RFC determination [#10 at 12-13], or that the ALJ did not rely exclusively on her conclusion that Plaintiff had performed SGA [*id.* at 12], does not render the ALJ's error harmless. It would be an improper post hoc justification for this Court to review the evidence and say that the ALJ *could* have reached the same conclusion had she not relied upon the improper finding that Plaintiff had been able to perform SGA. Thus, because the Court cannot confidently conclude that this ALJ (let alone any reasonable administrative factfinder), following the correct analysis, could not have concluded that Plaintiff was disabled, the Court cannot find harmless error.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, the Court **REVERSES** the Commissioner's decision that Plaintiff was not under a disability within the meaning of the SSA from December 31, 2020 through September 26, 2023 and **REMANDS** this matter to the Commissioner for rehearing and reconsideration consistent with this Order.

DATED:  October 28, 2025                    BY THE COURT:

                                                                s/Scott T. Varholak
                                                                Chief United States Magistrate Judge